UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEBBIE I.,[1]

                                Plaintiff,         Case # 19-CV-1089-FPG

v.                                                                           DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## INTRODUCTION

On August 15, 2016, Plaintiff Debbie I. protectively filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), alleging disability beginning on November 17, 2015. Tr.[2] 67, 171-72. The Social Security Administration ("SSA") denied her claim on October 3, 2016, Tr. 99-110, and Plaintiff filed a timely request for a hearing, Tr. 111-13. Prior to the hearing, Plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act, again alleging an onset date of November 17, 2015. Tr. 185-94.

Plaintiff appeared, with counsel, at a hearing before Administrative Law Judge Carl E. Stephan ("the ALJ") on September 25, 2018. Tr. 36-54. No vocational expert testified. On October 26, 2018, the ALJ issued an unfavorable decision. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[3] ECF No. 1.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only her first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 6.

[3] The Court has jurisdiction over this action under 42 U.S.C. § 1383(c)(3).

1

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 13. Plaintiff replied. ECF No. 14. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further proceedings.

## LEGAL STANDARD

### I. District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II. Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her

past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### I.  The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found Plaintiff had not engaged in gainful activity since the alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff had one severe impairment: back disorder. Tr. 18. The ALJ did not find any of Plaintiff's alleged mental impairments to be severe. Tr. 18-21. At step three, the ALJ found that Plaintiff's impairment did not meet or medically equal any Listings impairment. Tr. 21. The ALJ only specifically addressed Listing 1.00, "referable to musculoskeletal disorders." Tr. 21.

Next, the ALJ determined that Plaintiff retains the RFC to perform "light work" but can only "occasionally climb, balance, stoop, kneel, crouch and crawl." Tr. 21. At step four, the ALJ found that Plaintiff was not capable of performing her past relevant work as a certified nurse assistant, but, at step five, the ALJ concluded that there were jobs in the national economy that Plaintiff could perform. Tr. 28-29. Therefore, the ALJ concluded that Plaintiff is not disabled. Tr. 29-30.

### II.  Analysis

Plaintiff argues that the ALJ failed to consider (1) Listing 1.04(A) for Plaintiff's lumbar spine issues and (2) Plaintiff's use of a medically required cane under SSR 96-9p. The Court agrees.

### A.      Listing 1.04(A)

A claimant is disabled if her impairments meet or medically equal the specific requirements of a medical Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Here, the ALJ asserted that he "carefully considered all of the physical and mental impairments, specifically listing 1.00, referable to musculoskeletal disorders" but concluded that Plaintiff did not "meet or equal the criteria of any listed impairment." Tr. 21. Plaintiff argues that the ALJ failed to explain how Plaintiff's back issues did not meet Listing 1.04. The Court agrees.

To satisfy Listing 1.04, a claimant must prove:

1. A disorder of the spine, including but not limited to "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture," and

2. "Compromise of nerve root (including the cauda equina) or the spinal cord," and

3. "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness)," and

4. "Sensory or reflex loss," and if there is involvement of the lower back,

5. "Positive straight-leg raising test" in both the sitting and supine position.

*Ramirez Morales v. Berryhill*, No. 6:17-CV-06836-MAT, 2019 WL 1076088, at *3 (W.D.N.Y. Mar. 7, 2019) (quoting 20 C.F.R. Part 404, Subpart P, Appendix 1).

The record here suggests that Plaintiff could meet at least some of the requirements of Listing 1.04, if not all of them. With respect to the first element, the ALJ found that Plaintiff's "back disorder" was a severe impairment, Tr. 18, and consulting orthopedic surgeon Robert Bauer, M.D., diagnosed Plaintiff with lumbar disc degeneration, Tr. 306. On the second element, the record also indicates that Plaintiff's disc herniation at L5-S1 causes mild effacement of both exiting L5 nerve roots. Tr. 326. Minimal effacement of exiting L4 nerve roots "cannot be entirely

ruled out." Tr. 326.  With respect to the third requirement, consultative examining physician Hongbiao Liu, M.D. and treating chiropractor Geoffrey Gerow, D.C. concluded that Plaintiff's straight leg raise test, which detects nerve root pressure, was positive, indicating nerve root compression.  Tr. 321, 391.  Plaintiff complained repeatedly of radiating pain, numbness, and tingling.  Tr. 305, 349, 456, 464, 473, 503, 545.  There is ample evidence of limitation of motion of the spine.  Specifically, Dr. Liu found on exam that Plaintiff had restricted range of spine motion, Tr. 320-21, treating pain specialist Jerry Tracy, M.D., found forward flexion limitation to about 45 degrees, Tr. 351, on exam Dr. Bauer found on exam markedly limited range of lumbar extension and range of motion, Tr. 305, and Dr. Gerow found a limited range of motion of the lumbar spine with flexion of 40 degrees, Tr. 391.  Multiple medical professionals found that these limitations were manifested in motor loss.  For example, on exam, Dr. Liu and Dr. Gerow concluded that Plaintiff could not perform heel to toe walking and that Plaintiff was unable to squat.  Tr. 320, Tr. 391.  With respect to the fourth element, Dr. Tracy found that Plaintiff experienced reflex sensory loss.  Tr. 351.  Finally, and as discussed above, at least two sources—Dr. Liu and Michael Manka, M.D.—concluded on exam that Plaintiff had a positive straight-leg raising test.  Tr. 321 (Dr. Liu); Tr. 429 (Dr. Manka).

Despite this evidence suggesting that, at the very least, Plaintiff met some of the requirements of Listing 1.04, the ALJ here never discussed it.  "[T]he ALJ is required to explain why a claimant failed to meet or equal the Listings [w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings." *Monsoori v. Comm'r of Soc. Sec.*, No. 1:17-CV-01161-MAT, 2019 WL 2361486, at *3 (W.D.N.Y. June 4, 2019) (quoting another source).  Even where, as here, a claimant "appears to meet at least some of the requirements of a listing, the ALJ is obligated to explain the reasons for finding that the listing is

5

not met." *Nelson v. Colvin*, 114 F. Supp. 3d 69, 75 (W.D.N.Y. 2015). "While the ALJ may ultimately find that [a considered listing] do[es] not apply to Plaintiff, he must still provide some analysis of Plaintiff's symptoms and medical evidence in the context of the Listing criteria." *Critoph v. Berryhill*, No. 1:16-CV-00417(MAT), 2017 WL 4324688, at *3 (W.D.N.Y. Sept. 28, 2017) (quoting another source). Not only did the ALJ fail to analyze Listing 1.04, he completely and erroneously failed to mention it. *Courson v. Comm'r of Soc. Sec.*, No. 18-CV-1262, 2020 WL 85126, at *4 (W.D.N.Y. Jan. 7, 2020) ("Indeed, the ALJ did not simply fail to explain his reasons for finding that [plaintiff] did not meet Listing 1.04; rather, he never even mentioned the listing.").

The Commissioner argues that the ALJ's failure to explicitly consider Listing 1.04 is harmless because the ALJ *did* cite the general listing attributable to musculoskeletal disorders. The Court is not persuaded. Although the ALJ mentioned Listing 1.00, which introduces disorders of the musculoskeletal system, of which Listing 1.04 is a part, "the conclusory reference does not give this Court any reason to believe that he specially considered that listing." *Courson*, 2020 WL 85126, at *5. This is so because the ALJ's decision is completely devoid of analysis as to why Plaintiff does not meet Listing 1.00; the decision summarily concludes that the record does not establish that Plaintiff meets or equals that Listing. Tr. 21. "Because the ALJ did not refer to the Listing specifically, the Court cannot determine whether the ALJ properly considered it." *Ramirez Morales v. Berryhill*, No. 17-cv-6836, 2019 WL 1076088, at *4 (W.D.N.Y. Mar. 7, 2019).

The Commissioner also argues that there is *some* evidence that Plaintiff did not meet Listing 1.04. This is an impermissible *post hoc* rationalization. As explained above, the ALJ never addressed whether Plaintiff met Listing 1.04, or, for that matter, Listing 1.00. Even if there were inconsistencies in the record, it is the ALJ's duty to resolve them. *Netter v. Astrue*, 272 F. App'x


…

54, 55 (2d Cir. 2008) (summary order) ("It is the function of the [Commissioner] . . . to resolve evidentiary conflicts."). The ALJ did no such thing.

The court in *Courson*, faced with a nearly identical situation, put it best: "Because the ALJ failed to address whether [Plaintiff's back disorder] met Listing 1.04, this Court cannot effectively review the ALJ's decision at step three. Accordingly, this Court remands this matter so that the ALJ can address Listing 1.04." *Courson*, 2020 WL 85126, at *5.

### B.     Use of a Cane Under SSR 96-9p

Even if the ALJ did not err in failing to address Listing 1.04, he did err in failing to consider Plaintiff's use of a cane.

The record contains multiple references to Plaintiff's need for a cane. For example, Dr. Tracy prescribed a cane in 2016. Tr. 351. Dr. Tracy even indicated that Plaintiff "cannot stand completely upright." Tr. 351. A treating orthopedic surgeon found in 2018 that Plaintiff ambulates with the use of cane. Tr. 458, 466, 471. And, medical providers noted on several occasions that Plaintiff had an antalgic gait. Tr. 499, 501, 502, 508, 509, 511, 513, 516. At the hearing, Plaintiff testified that she "[a]lways use[s] my cane. Helps me balance." Tr. 53. She said she could not walk "too far" without the use of the cane. Tr. 53. And when she was asked whether the cane was prescribed, she responded, "[t]hey gave me a walker when I came out of the hospital but Dr. Fishkin says it's better for me to have a cane. So I got a cane." Tr. 54. While the ALJ referenced *some* but not all of this evidence, Tr. 23, he *never* evaluated whether Plaintiff would need a cane and how that cane would affect her ability to work.

Once medical need for an assistive device has been established, the ALJ must incorporate that device into the RFC. SSR 96-9P, 1996 WL 374185 (1996). For example, in *Feringa v. Comm'r of Soc. Sec.*, the court remanded where a cane was approved by medical providers and

7

the consultative evaluator, but the ALJ's RFC did not reflect the additional limitations someone with a cane may have. No. 15-cv-785, 2016 WL 5417403 (N.D.N.Y. Sept. 9, 2016). The Court explained:

> The ALJ's RFC appears to take into account, in part, the fact that plaintiff uses a cane insofar as he was to avoid climbing scaffolds, ropes, and ladders, and must have a sit/stand option. However, the RFC does not address additional possible limitations that arise for someone who requires the aid of a cane when ambulating, such as how use of a cane in one's dominant hand may impact his ability to complete some of the duties of light work, such as the ability to carry items weighing up to twenty pounds with one hand while using a cane in the other, and whether the need to use a cane in general could result in additional limitations on light work.

*Id.* at *7. The ALJ's decision does not even go this far, calling into serious question whether use of a cane was ever evaluated.

The Commissioner now cherry picks evidence from the record suggesting that Plaintiff may not need a cane. This is an impermissible *post hoc* rationalization. *Accord Alazawi v. Comm'r of Soc. Sec.*, No. 18-CV-00633, 2019 WL 4183910, at *4 (W.D.N.Y. Sept. 4, 2019) ("This court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." (quoting another source)).

Even so, "the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,'" *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 297 (W.D.N.Y. 2006) (quoting *Gecevic v. Sec. of Health & Human Servs.*, 882 F. Supp. 278, 286 (E.D.N.Y. 1995)), and there is no "absolute bar to crediting only portions of medical source opinions." *Younes v. Colvin*, No. 14-cv-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). Yet, where the ALJ's "RFC assessment conflicts with an opinion from a medical source, the adjudicator must

explain why the opinion was not adopted." *Dioguardi*, 445 F. Supp. 2d at 297 (quoting Soc. Sec. Ruling 96-8p, 1996 WL 374184, *7 (1996)).

This is not harmless error because Plaintiff's need to use a cane to balance may interfere with her ability to perform light work while standing and holding a cane. *See Vanever v. Berryhill*, No. 16-CV-1034, 2018 WL 4266058, at *2 (W.D.N.Y. Sept. 6, 2018) ("This error was not harmless. Once medical need for an assistive device has been established, the ALJ must incorporate that device into the RFC.").

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 11, is GRANTED, the Commissioner's motion for judgment on the pleading, ECF No. 13, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 23, 2020
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court